IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| CHARLOTTE ANNE ROBINSON, as the Administratrix of the Estate of FAITH DENISE WHITCOMB, deceased, | ) ) ) ) | No. 13 cv 5162 |
| Plaintiff, | ) ) | Honorable P.K. Holmes, III |
| v. | ) ) | |
| DR. JOHN ALLAN HUSKINS, DR. WARREN SCOTT LAFFERTY, KEITH FERGUSON, COUNTY OF BENTON, DEPUTY SARA K. HARMON, CORPORAL SUZANNE D. HALL, DEPUTY RYAN RICHARDS, MARSHA SMITH, R.N., SERGEANT JAMES MORGAN, CAPTAIN CHRIS SPARKS, KELLEY CRADDUCK, and UNKNOWN BENTON COUNTY JAIL EMPLOYEES AND JAIL MEDICAL PERSONNEL, | ) ) ) ) ) ) ) ) ) ) ) ) | Jury Trial Demanded |
| Defendants. | ) | |

## AMENDED COMPLAINT

Now comes Plaintiff, CHARLOTTE ANNE ROBINSON, as Administrator of the ESTATE OF FAITH DENISE WHITCOMB, by and through her attorneys, LOEVY & LOEVY, and complaining of Defendants, JOHN ALLAN HUSKINS, individually and in his official capacity as the Physician of Benton County Jail; WARREN SCOTT LAFFERTY, individually and in his official capacity as the Physician of Benton County Jail; KEITH FERGUSON, individually and in his official capacity as the Sheriff of Benton County; THE COUNTY OF BENTON; SARA K. HARMON; SUZANNE D. HALL; RYAN RICHARDS; MARSHA SMITH; JAMES MORGAN; CAPTAIN CHRIS SPARKS, individually and in his official

capacity as the Captain of Benton County Jail; SHERIFF KELLEY CRADDUCK, in his official capacity; and UNKNOWN JAIL OFFICERS AND JAIL MEDICAL PERSONNEL (collectively, "Defendants"), states as follows:

## Introduction

1. This action is brought pursuant to 42 U.S.C. § 1983 and state law to redress the deprivation under color of law of Denise Whitcomb's rights as secured by the United States Constitution.

2. On or about May 3, 2012, Denise Whitcomb was found dead in the Benton County Jail in Bentonville, Arkansas. For ten months prior to Ms. Whitcomb's death, she pleaded with jail employees to receive adequate medical care for her increasingly worsening conditions. Even though they knew she needed help, the Defendants failed to meet her basic medical needs. Instead, they allowed Ms. Whitcomb's conditions to worsen and forced her to endure extreme amounts of pain with nothing more than Tylenol for comfort. Unassisted by those whose duty it was to care for her, Ms. Whitcomb eventually died alone in her cell.

## Jurisdiction and Venue

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

4. Venue is proper under 28 U.S.C. § 1391(b) and (c). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

## The Parties

5. Faith Denise Whitcomb, deceased, was a fifty-two year-old resident of Arkansas. She remained in the custody of the Benton County Jail from July 5, 2011 until May 3, 2012,

when she died in her jail cell.  Ms. Whitcomb was the cousin of Plaintiff Charlotte Ann Robinson, who is the duly appointed Administrator of her estate.

6. At the time of the events at issue in this case, Ms. Whitcomb was detained at the Benton County Jail ("Jail") in Bentonville, Arkansas.

7. At all relevant times, the Benton County Jail was operated by then-Benton County Sheriff, Defendant Keith Ferguson.

8. The Benton County Jail is currently operated by Benton County Sheriff Kelley Cradduck.

9. From July 5, 2011 through May 3, 2012, and at all times relevant to the events at issue in this case, Defendant Ferguson was employed by the Benton County Sheriff's Department in the capacity of Sheriff.  In that capacity, Defendant Sparks oversaw the policies and procedures at the jail, as well as the employees' compliance or non-compliance with those policies/procedures.  At all relevant times, he acted as a policy-maker for the Jail.  At all relevant times, Sparks was acting under color of law.  As such, Defendant Ferguson was acting under color of law.

10. From July 5, 2011 through May 3, 2012, and at all times relevant to the events at issue in this case, Defendant Chris Sparks was employed by the Benton County Sheriff's Department in the capacity of Captain of the Jail.  In that capacity, Defendant Sparks oversaw the policies and procedures at the jail, as well as the employees' compliance or non-compliance with those policies/procedures.  At all relevant times, he acted as a policy-maker for the Jail.  At all relevant times, Sparks was acting under color of law.

11. From July 5, 2011 through May 3, 2012, and at all times relevant to the events at issue in this case, Defendant Ferguson promulgated rules, regulations, policies, and procedures

as Sheriff of Benton County for the provision of certain medical care by medical personnel and correctional officers, including administration of medication, ensuring access to medical testing, and provision of necessary medical treatment, to detainees at the Benton County Jail. In addition, Defendant Ferguson promulgated rules, regulations, policies, and procedures regarding the treatment of mentally ill detainees and their placement with specialized mental health workers and/or the Arkansas Department of Human Services. Defendant Ferguson's policies were implemented by and through Jail employees, including the individual Defendants and Unknown Defendants, who were responsible for the medical care of detainees at Benton County Jail.

12. From July 5, 2011 through May 3, 2012, and at all times relevant to the events at issue in this case, Defendant Ferguson promulgated rules, regulations, policies, and procedures as Sheriff for the training, supervision, and discipline of jail officers and medical personnel with respect to: (1) communicating or failing to communicate detainee requests for medication or medical attention to medical care personnel; (2) communicating with and handling detainees who have mental illness; (3) responding to detainee requests for assistance; (4) alerting or failing to alert medical care personnel to detainees' medical needs; (5) providing or failing to provide medication or medical attention to detainees; (6) treatment of detainees with HIV; (7) treatment of detainees with mental illness; (8) placement of detainees believed to have HIV into segregated, isolated, or solitary quarters; and (9) placement of detainees believed to have mental illness into segregated, isolated, or solitary quarters. Defendant Ferguson's policies were implemented by and through Jail employees, including the individual Defendants and Unknown Defendants, who were responsible for the medical care of detainees at Benton County Jail.

13. From July 5, 2011 through May 3, 2012, and at all times relevant to the events at issue in this case, Defendant Ferguson, as Sheriff of Benton County, was the final policymaker for the Benton County Sheriff's Department and the Benton County Jail.

14. From July 5, 2011 through approximately March 3, 2012, and at all times relevant to the events at issue in this case, Defendant Dr. John Allan Huskins was employed by the Benton County Sheriff's Department as the Physician of the Benton County Jail. In that capacity, Dr. Huskins had the responsibility to provide evaluation, care, treatment, and medication to detainees incarcerated at the Benton County Jail; he controlled the Jail's practices with respect to the provision of medical care; and he acted as a policymaker on medical care issues. As such, Defendant Huskins was acting under color of law.

15. On information and belief, from approximately April 1, 2012, through approximately May 3, 2012, and at all times relevant to the events at issue in this case, Defendant Dr. Warren Scott Lafferty was employed by the Benton County Sheriff's Department as the Physician of the Benton County Jail. In that capacity, Dr. Lafferty had the responsibility to provide evaluation, care, treatment, and medication to detainees incarcerated at the Benton County Jail; he controlled the Jail's practices with respect to the provision of medical care; and he acted as a policymaker on medical care issues. As such, Defendant Lafferty was acting under color of law.

16. Defendant County of Benton is a county of the State of Arkansas. It oversees the Benton County Sheriff's Department, which, in turn, operates the Benton County Jail.

17. From July 5, 2011 through May 3, 2012, and at all times relevant to the events at issue in this case, Defendants Harmon, Hall, Richards, Morgan, Sparks, and Unknown Benton County Jail Employees were employed by the Benton County Sheriff's Department and worked

at the Benton County Jail as officers. Defendants Harmon, Hall, Richards, Morgan, Sparks, and Unknown Benton County Jail Employees were responsible for the day-to-day treatment and welfare of inmates, including Plaintiff. These Defendants were acting under color of law at all relevant times.

18. From July 5, 2011 through May 3, 2012, and at all times relevant to the events at issue in this case, Defendant Marsha Smith, RN, and Unknown Benton County Jail Medical Personnel were employed by the Benton County Sheriff's Department and worked at the Benton County Jail as nurses, doctors, or other medical staff employed to provide medical services to inmates, including Plaintiff, at Benton County Jail. Defendants Smith and Unknown Benton County Jail Medical Personnel were responsible for the provision of medication to, medical care, treatment, and welfare of Plaintiff while she was detained at Benton County Jail. As such, these Defendants were acting under color of law.

**Background**

19. At all times relevant to the events at issue in this case, Denise Whitcomb suffered from mental illness, including schizophrenia. Prior to her arrest, Ms. Whitcomb received prescription medications for her mental illnesses and was monitored regularly. This medical treatment allowed her to maintain a steady job, meet her own basic needs, and communicate with treaters and others.

20. In addition, Ms. Whitcomb was identified as HIV positive. The Jail responded to Ms. Whitcomb's apparent HIV-status by placing Ms. Whitcomb in isolation for 23 hours a day for nearly ten months, even though doing so violated well-established medical standards in the correctional setting.

21. Unbeknownst to Ms. Whitcomb, she also suffered from pancreatic cancer. While the date of onset is not known, what is known is that she endured one of the most painful forms of cancer for more than ten months at Benton County Jail without a single pain medicine except for Tylenol. Even though Ms. Whitcomb began displaying numerous objective signs of serious illness, including dramatic weight loss, skin discoloration, swelled legs, and complaints of unrelenting pain, including intestinal burning and severe back and hip pain, none of the Defendants provided, or arranged for Ms. Whitcomb to receive, medical treatment or pain control. Nor did any of the Defendants provide, or arrange for Ms. Whitcomb to receive, any medical evaluation, such as a physical or a basic blood test, that could, and likely would, have alerted competent medical professionals to her cancer.

**Defendants' Failure to Provide Ms. Whitcomb With Necessary Medical Care**

22. On or about July 5, 2011, Ms. Whitcomb was arrested and taken to the Benton County Jail. Unable to post bond, she remained at the Jail until her untimely death. At all relevant times, Ms. Whitcomb was a pretrial detainee.

23. Ms. Whitcomb appeared for a bond hearing on or about July 7, 2011. At her bond hearing, it was noted that she suffered from schizophrenia and was disabled.

24. Ms. Whitcomb also reported her medical conditions and medication requirements to the Benton County Jail booking officer upon admission.

25. On or about September 19, 2011, Ms. Whitcomb's public defender requested a mental evaluation to determine whether Ms. Whitcomb was fit to assist in her own defense. The Court granted the requested and ordered a mental evaluation of Ms. Whitcomb.

26. Ms. Whitcomb's mental evaluation was conducted by a psychologist from the Ozark Guidance Center on or about October 5, 2011. The mental evaluation results indicated

that Ms. Whitcomb had schizophrenia and was not fit to proceed to trial. On or about November 7, 2011, a Benton County Circuit Court Judge ordered Ms. Whitcomb to be transported to the Arkansas Department of Human Services (Arkansas State Hospital in Little Rock)

27. A court order entered on or about November 8, 2011, directed the Benton County Sheriff's Department to transport Ms. Whitcomb to the Arkansas State Hospital.

28. In violation of Ms. Whitcomb's constitutional rights and despite the Court order to do so, none of the Defendants transferred Ms. Whitcomb to the Arkansas State Hospital or to any other medical facility.

29. Instead, Ms. Whitcomb was held at the Benton County Jail, in solitary confinement, for nearly ten months. On information and belief, the Defendants placed her into solitary confinement because of her HIV status and/or her mental illness. Ms. Whitcomb was forced to endure 23 hours of every day alone in her cell without adequate access to medical care. Ms. Whitcomb's solitary confinement was neither medically necessary, nor did it serve any legitimate penal interest. Ms. Whitcomb had never been considered a threat to herself or others.

30. From July 5, 2011 until the day she died, Ms. Whitcomb repeatedly sought medical care from the Defendants. She submitted countless written grievances in which she asked for her prescribed medications, asked for medical care, and asked to be taken to the hospital. In addition, she repeatedly complained of pain, which began spreading throughout her body and increased in severity as her disease progressed.

31. However, Ms. Whitcomb never received pain medication, other than over-the-counter Tylenol and Pepto Bismal. In addition, she was never given a physical examination, a blood test, an x-ray, or a scan. None of the medical employees at the Jail, including the

Defendants, conducted even a cursory inquiry into the reason for her sudden weight loss, jaundiced looking skin, severe back pain, or intestinal burning, among other symptoms.

32. During the weeks and months immediately preceding her death, Ms. Whitcomb repeatedly screamed out in pain and pleaded for help to all jail employees who were present near her cell.

33. At various points during her custody, and on information and belief, Ms. Whitcomb asked each of the Defendants for her medications or for assistance in obtaining medical care.

34. Inmates in neighboring cells heard Ms. Whitcomb's pain cries and pleas for medical care, observed her walking around with soiled pants, and observed other signs of distress. In addition, friends and family contacted the Jail and asked them to provide Ms. Whitcomb with the medical care she needed, or at least to transport her to a hospital.

35. Ms. Whitcomb, as well as her family and friends, grew fearful that she would die in Jail.

36. In addition, and on information and belief, Ms. Whitcomb did not receive all of her prescribed medications for her mental conditions, thus impacting her mental state, her pain and suffering, her emotional distress, and her ability to communicate her physical complaints. In addition, Defendants did not provide Ms. Whitcomb with access to any other treatment for her mental illnesses.

37. Nor did the Defendants provide Ms. Whitcomb with access to any medications or medical treatment for HIV.

38. Despite the frequency and urgency of Ms. Whitcomb's complaints, the Defendants failed to provide her with medically necessary treatment, and/or they failed to alert

appropriate medical personnel about her complaints.  The Defendants tasked with handling her requests for medical assistance intentionally denied and/or delayed Ms. Whitcomb's access to medical care.

39. Although Defendants were on notice that Plaintiff suffered from an objectively serious medical conduction and was very ill, they did not adequately respond to her requests for medication and medical attention.

40. For example, one or more of the Defendants responded to Plaintiff's grievance by stating that she was already receiving Tylenol, or that she had just seen a doctor, or that she had to wait to see a doctor in order to get her medication, but they did nothing to ensure that Plaintiff actually saw the doctor.

41. When Plaintiff did have direct contact with a doctor or nurse, she was not examined in any meaningful way, nor was she given necessary medical care.

42. From approximately March 3, 2012 until April 1, 2012, the Jail did not employ a single physician, and thus Ms. Whitcomb was denied access to a physician's care.

## Denise Whitcomb's Death

43. Approximately ten months after her arrest, Ms. Whitcomb was found lying face down on her cell floor, dead.  She appeared blue in the face and her pants were soiled.

## Count I – 42 U.S.C. § 1983
## Denial of Medical Care

44. Each paragraph of this Complaint is incorporated as if restated fully herein.

45. As described more fully above, Defendants had notice of Denise Whitcomb's medical needs and the seriousness of her medical needs, and yet, they deliberately disregarded those risks and failed to provide her with adequate medical attention, in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

46. As a result of the unjustified and unconstitutional conduct of Defendants, Denise Whitcomb experienced pain, suffering, emotional distress, injury, and ultimately, death.

47. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of others, or with a high probability that the conduct would result in injury to Plaintiff and in a violation of Plaintiff's constitutional rights.

48. Alternatively, Defendants were deliberately indifferent to Denise Whitcomb's objectively serious medical needs and/or to a substantial risk of serious medical harm, and their acts were undertaken intentionally with malice, willfulness, and deliberate indifference to the rights of others.

49. From July 2011 through May 2012, and for a period of time prior thereto, Defendants Ferguson, Huskins, Lafferty, and Sparks had notice of a widespread practice by employees at the Benton County Jail under which detainees with serious medical conditions, including but not limited to those with mental illnesses such as Denise Whitcomb, were routinely denied access to proper or sufficient medication or medical attention.

50. Specifically, there existed a widespread practice at Benton County Jail under which Jail employees, including officers and medical personnel, failed or refused to: (1) properly examine a detainee with a serious medical condition; (2) provide proper medication to a detainee with a serious medical condition; (3) respond to detainees who requested medical attention or medication or asked to see a doctor; (4) respond to detainees who exhibited obvious signs of a serious medical condition or illness; (5) transport detainees with mental illness to a hospital or other appropriate medical setting, even when ordered to do so by a Court, where they can receive necessary specialized care; (6) provide inmates with serious medical needs with access to

medications or medical care; or (7) conduct a complete review of all relevant medical records relating to the inmate.

51.     This widespread practice is allowed to flourish because Defendants directly encourage, and are thereby the moving force behind, the very type of misconduct at issue by failing to adequately train, supervise, and control correctional officers and medical personnel, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Denise Whitcomb.  In this way, Defendants violated Denise Whitcomb's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

52.     The above-described widespread practice, so well-settled as to constitute de facto policy within Benton County Jail, was able to exist and thrive because policymakers acting under color of law with authority over the same, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

53.     Denise Whitcomb's injuries were caused by employees of Benton County and the Benton County Sheriff's Department, including but not limited to the individually named Defendants, who acted pursuant to the above-described policies and practices in engaging in the misconduct described in this Count.

54.     Denise Whitcomb's injuries were caused by employees of Benton County and the Benton County Sheriff's Department, including but not limited to the individually named Defendants, who acted pursuant the policies and practices of the Sheriff, Huskins, Lafferty, and/or Sparks.

### Count II – 42 U.S.C. § 1983
### Failure to Intervene

55.     Each paragraph of this Complaint is incorporated as if restated fully herein.

56. As described more fully above, one or more Defendants had a reasonable opportunity to prevent the violation of Denise Whitcomb's constitutional rights as set forth above had they been so inclined, but failed to do so.

57. Defendants' actions were undertaken intentionally, with malice and reckless indifference to Denise Whitcomb's rights.

58. As a direct and proximate result of the misconduct described in this Count, Denise Whitcomb's rights were violated and she suffered injuries, including but not limited to emotional distress and death.

59. Denise Whitcomb's injuries were caused by employees of Benton County and the Benton County Sheriff's Department, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices of the Benton County Sheriff.

## Count III – 42 U.S.C. § 1983
## Due Process Violations

60. Each paragraph of this Complaint is incorporated as if restated fully herein.

61. In the manner described more fully above, one or more of the Defendants failed to transport her to the Arkansas State Hospital in violation of the Benton County Circuit Court's order to do so. By denying Denise Whitcomb access to the hospital and violating the Court's order, one or more Defendants engaged in conduct that violated Ms. Whitcomb's due process rights under the United States Constitution.

62. Additionally, Defendants placed Denise Whitcomb in solitary confinement for all or part of her confinement at the Benton County Jail. There was no legitimate governmental purpose or medical/health need served by the solitary confinement. Rather, it constituted impermissible punishment in violation of Ms. Whitcomb's due process rights.

63. During her time in solitary confinement, Ms. Whitcomb was allowed no more than one hour per day outside her jail cell. In addition, she was not permitted access to the same services and amenities as other inmates who were not similarly confined. Her lengthy and unjustifiable confinement amounted to an atypical and significant hardship. Additionally and alternatively, it was so egregious a deprivation of her liberty as to shock the conscience.

64. From July 2011 through May 2012, and for a period of time prior thereto, Defendants Ferguson, Huskins, Lafferty, and Sparks had notice of a policy and practice within the Benton County Jail under which detainees with HIV and/or mental illness were routinely placed into isolation or solitary confinement for lengthy periods of time without a corresponding valid medical need or other legitimate governmental interest.

65. Defendants' actions were undertaken intentionally, with malice and reckless indifference to Denise Whitcomb's rights.

66. As a direct and proximate result of the misconduct described in this Count, Denise Whitcomb's rights were violated and she suffered injuries, including but not limited to emotional distress and death.

67. Denise Whitcomb's injuries were caused by employees of Benton County and the Benton County Sheriff's Department, including but not limited to the individually named Defendants, who acted pursuant to the above-described policies and practices in engaging in the misconduct described in this Count.

### Count IV – Americans with Disabilities Act

68. Each paragraph of this Complaint is incorporated as if restated fully herein.

69. Plaintiff is a "qualified individual" within the meaning of 42 U.S.C. § 12131(2).

70. Benton County Jail is a "public entity" within the meaning of 42 U.S.C. § 12131(1).

71. As more fully described above, Denise Whitcomb suffered from one or more physical impairments that rendered her mentally and physically disabled.

72. In the manner described more fully above, one or more of the Defendants excluded Ms. Whitcomb from participation in, or denied her the benefits of the services, programs, or activities of, the Benton County Correctional Facility and all medical referral services that were available to other inmates at that facility, because of her disabilities.

73. As a direct and proximate result of this misconduct, Ms. Whitcomb's rights were violated and she suffered physical and emotional injuries.

74. Ms. Whitcomb's injuries were caused by employees of the Benton County Jail, including, but not limited to, the individually named Defendants, who acted pursuant to the policies and practices of the Benton County Jail.

75. The actions and omissions described in this count were done in such a way that their employers are liable for the actions and omissions.

### Count V – State Law Claim
### Survival Action – Intentional Infliction of Emotional Distress

76. Each paragraph of this Complaint is incorporated as if restated fully herein.

77. In the manner described more fully above, by denying Denise Whitcomb medical attention, the Defendants engaged in extreme and outrageous conduct.

78. Defendants' actions set forth above were rooted in an abuse of power or authority.

79. Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

80. Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of others.

81. The misconduct described in this Count was undertaken by Defendants within the scope of their employment such that their employer is liable for their actions.

82. As a direct and proximate result of this misconduct, Denise Whitcomb suffered injuries, including severe emotional distress and great conscious pain and suffering, prior to her death.

83. Denise Whitcomb filed no action during her lifetime, but under the laws of the State of Arkansas, this action survives and may be asserted by her Estate.

84. Plaintiff Charlotte Robinson, in her capacity as Administrator of the Estate of Faith Denise Whitcomb, claims damages for the pain and suffering of Denise Whitcomb, pursuant to A.C.A. §16-62-101, commonly referred to as the Survival Statute.

### Count VIII – State Law Claim
### Survival Action – Negligent or Willful and Wanton Conduct

85. Each paragraph of this Complaint is incorporated as if restated fully herein.

86. In the manner described more fully above, the actions of Defendants breached the duty of care owed to detainees in their care. They did so by ignoring Denise Whitcomb's request for medical attention.

87. Alternatively, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others. Defendants were conscious that an injury would probably result from the above-described course of action and recklessly disregarded the consequences of those actions.

88. The misconduct described in this Count was undertaken with intentional disregard of Denise Whitcomb's rights.

89. As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Denise Whitcomb suffered great conscious pain and suffering prior to her death.

90. Denise Whitcomb's filed no action during her lifetime, but under the laws of the State of Arkansas, this action survives and may be asserted by her Estate.

91. Plaintiff Charlotte Robinson, in her capacity as Administrator of the Estate of Denise Whitcomb, claims damages for the conscious pain and suffering of Denise Whitcomb, pursuant to A.C.A. §16-62-101, commonly referred to as the Survival Statute.

### Count X – State Law Claim
### Medical Malpractice – Defendants Huskins and Lafferty

92. Each paragraph of this Complaint is incorporated as if restated fully herein.

93. As is more fully described above, Defendants Huskins and Lafferty were employed as the Physicians of Benton County Jail.

94. Defendants Huskins and Lafferty failed to act in accordance with the standard of care, and failed to manifest the degree of skill and learning ordinarily possessed and used by general practitioners in good standing, engaged in the same type of practice or specialty in other correctional institutions as well as in Benton County, Arkansas.

95. As a proximate result of Defendants' negligent conduct, Denise Whitcomb suffered physical and emotional injuries.

### Count XI – State Law Claim
### Respondent Superior—Sheriff Cradduck

96. Each paragraph of this Complaint is incorporated as if restated fully herein.

97. In committing the acts alleged in the preceding paragraphs, Defendant Officers were employees, members, and agents of the Benton County Sheriff's Department acting at all relevant times within the scope of his or her employment.

98. Sheriff Cradduck is liable as principal for all torts committed by his agents.

WHEREFORE, Plaintiff, CHARLOTTE ANNE ROBINSON, as Administrator of the ESTATE OF FAITH DENISE WHITCOMB, respectfully requests that this Court enter a judgment in his favor and against Defendants, JOHN ALLAN HUSKINS, individually and in his official capacity as the Physician of Benton County Jail; WARREN SCOTT LAFFERTY, individually and in his official capacity as the Physician of Benton County Jail; KEITH FERGUSON, individually and in his official capacity as the Sheriff of Benton County; THE COUNTY OF BENTON; SARA K. HARMON; SUZANNE D. HALL; RYAN RICHARDS; MARSHA SMITH; JAMES MORGAN; CAPTAIN CHRIS SPARKS, individually and in his official capacity as the Captain of Benton County Jail; SHERIFF KELLEY CRADDUCK, in his official capacity; and UNKNOWN JAIL OFFICERS AND JAIL MEDICAL PERSONNEL awarding compensatory damages, including medical and cremation expenses, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, CHARLOTTE ROBINSON, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

/s/ Roshna Bala Keen
One of Plaintiff's Attorneys

Arthur Loevy
Roshna Bala Keen
LOEVY & LOEVY
312 N. May St., Ste. 100
Chicago, IL 60607
(312) 243-5900

Doug Norwood
Jon Nelson
NORWOOD & NORWOOD, P.A.
2001 South Dixieland Road
P.O. Box 1960
Rogers, Arkansas 72757
(479) 636-1262 telephone
(479) 636-7595 facsimile